UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| BENNIE J. POTEET, II, Individually and | ) | |
| by and through EVELYN POTEET, as | ) | |
| conservator of Bennie Joe Poteet, II, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:05-CV-309 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| POLK COUNTY, TENNESSEE, *et al*., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM

Before the Court is Defendant National Healthcare of Cleveland, Inc., d/b/a Cleveland

Community Hospital's ("Defendant Hospital") motion for partial summary judgment (Court File No.

131). Defendant Hospital filed a memorandum in support of its motion (Court File No. 132) as well

as two supporting affidavits of Dawn Haynes, R.N. and John Hyde, Ph.D. (Court File No. 132,

Attachments 1 & 2). Plaintiff Bennie Poteet, II, both individually and by and through Evelyn

Poteet, his conservator ("Plaintiff ") filed a response, a response brief and supporting deposition

excerpts (Court File Nos. 166 & 167).[1] Defendant Hospital filed a reply brief (Court File No. 200).

---

[1] On the same day, Plaintiff also filed a motion for extension of time to respond to Defendant Hospital's partial summary judgment motion (Court File No. 164) and the supporting affidavit of his attorney, Michael Anderson (Court File No. 165). As cause, Plaintiff indicated he needed more time to take the deposition of the Defendant Hospital's corporate representative in order to fully respond to Defendant Hospital's motion (Court File No.164). The court denied Plaintiff's motion (Court File No. 195). Plaintiff then filed a motion to alter or amend the Court's order denying its motion for an extension of the deadline (Court File No. 198). The Court also denied Plaintiff's motion to alter or amend its previous order noting that the deadline to respond was March 5, 2007 (Court File No. 206). While Plaintiff's motion to alter or amend was pending, on March 13, 2007, he filed a supplemental response brief to Defendant Hospital's motion for partial summary judgment along with new deposition excerpts (Court File No. 205). Plaintiff also filed a supplemental affidavit of his expert, Dr. Gary Salzman, in opposition to Defendant Hospital's motion for partial

After carefully considering the parties' arguments and the applicable law, the Court will **GRANT** Defendant Hospital's motion for partial summary judgment in its entirety.

Also before the Court is Plaintiff's motion to strike the affidavits of Dawn Haynes, R.N. and John Hyde, Ph.D. (Court File No. 169) along with an accompanying memorandum in support (Court File No. 170). Defendant Hospital filed a response brief along with the supplemental affidavits of Dawn Haynes, R.N. and John Hyde, Ph.D. (Court File No. 201) and a notice of manual filing of medical records of Polk County EMS (MedTrans) and Cleveland Community Hospital which the affiants reviewed and relied upon (Court File No. 202). The manual filing of these medical records is also noted on the docket (Court File No. 220).[2] For the following reasons, the Court will **DENY** Plaintiff's motion to strike these two affidavits and will consider them in connection with Defendant Hospital's motion for partial summary judgment.

---

summary judgment on March 22, 2007 (Court File No. 217). In response to the supplemental brief and affidavit Plaintiff submitted, Defendant Hospital filed two supplemental reply briefs as well as a supporting affidavit of its attorney, Brian Cummings (Court File Nos. 210, 222, & 223). Additionally, on April 5, 2007, Plaintiff filed a second supplemental response brief along with the affidavit of Jenny Beerman, R.N. (Court File No. 231). Pursuant to Local Rule 7.1(d) "no additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the court." E.D.TN LR 7.1(d). The remaining portion of 7.1(d) provides, "except that a party may file a supplemental brief of no more than five (5) pages to call to the court's attention developments occurring after a party's final brief is filed." *Id*. This exception allows the filing of a very short brief without the Court's approval only in exceptional circumstances when completely new information arises, which is not the case here. In addition to the Local Rules of the Eastern District of Tennessee, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Scheduling Order (Court File No. 26) provide specific deadlines for the disclosure of expert testimony and the close of discovery. Plaintiff filed some documents in non compliance with these rules and contrary to the Court's previous orders. Accordingly, the Court will not consider any briefs or evidence filed after the applicable deadline, March 5, 2007, in its resolution of Defendant Hospital's motion for partial summary judgment. The documents the Court will not consider include: Court File Nos. 205, 210, 217, 222, 223, and 231.

[2] These documents were manually filed because they are voluminous and contain protected information.

# I.  STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences which can be drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute.  *Id.* at 322.  A mere scintilla of evidence is not enough.  *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party.  *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907.  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347

(6th Cir. 1994).

## II.   **RELEVANT FACTS**

In deciding a motion for summary judgment the Court is required to view the evidence in the light most favorable to the nonmoving party, in this case Plaintiff. Based upon the affidavits and supplemental affidavits Defendant Hospital submitted as well as the deposition excerpts and affidavit Plaintiff submitted the Court determines the following facts are pertinent to the consideration of this motion.[3]

On November 11, 2004, emergency medical services responded to the Polk County Jail, where Plaintiff, Bennie Poteet, was incarcerated (Court File No. 167). Plaintiff had collapsed and was apparently having seizures (*Id.*). Plaintiff was transported to the emergency department of Defendant Hospital in Cleveland, Tennessee (*Id.*). Upon arrival at Defendant Hospital at approximately 10:50 a.m., Plaintiff was unconscious and unresponsive (Court File No. 132).[4] Plaintiff's medical history was provided by a jailer and EMS personnel (*Id.*). Part of the history provided indicated that Plaintiff had a "long history" of alcohol abuse and he had gone more than 24 hours without alcohol (*Id.*). Plaintiff was placed on a mechanical ventilation and given medication for seizures (Court File No. 167).

---

[3] Defendant Hospital submitted the affidavit of Dawn Haynes, R.N. and John Hyde, Ph.D. (Court File No. 132, Attachments 1 & 2) as well as the supplemental affidavits of both with supporting documentation attached (Court file No. 201, Attachments 1 & 2). Plaintiff submitted deposition excerpts (Court file No. 166, Attachments 1, 2, & 3) as well as the affidavit of Dr. Gary Salzman which was previously submitted in opposition to Dr. Adam Fall's motion for summary judgment (Court File No. 89).

[4] Upon admission there was no evidence of injury to Plaintiff's head, neck, nose, lip or mouth other than an injury caused when Plaintiff had bit his tongue (Court File No. 132).

Dr. Hugh Caldwell ("Dr. Caldwell") was the emergency department physician who saw Plaintiff (Court File No. 132).[5]  Dr. Caldwell's clinical impression was seizure/comatose and he ordered a Computed Tomography ("CT") scan of Plaintiff's head without contrast (*Id*.).  It was negative for any intracranial hemorrhage or obvious abnormalities (*Id*.).  Plaintiff claims he was having a stroke as a result of a blood clot and that a CT without contrast cannot reveal the presence of a clot in the brain (Court File No. 167).

Defendant Dr. Adam Fall ("Dr. Fall") was a hospitalist and Plaintiff's attending physician (Court File No. 132).  Dr. Fall diagnosed Plaintiff with status epilepticus likely secondary to alcohol withdrawal (Court File No. 167).  Plaintiff contends, through his expert, Dr. Gary Salzman ("Dr. Salzman"), that Dr. Fall did not consider the possibility of a stroke on November 11 or 12 despite the presence of clinical evidence consistent with stroke (*Id*.).  Plaintiff also argues that Dr. Fall should have ordered an Magnetic Resonance Imaging ("MRI") examination on Plaintiff on November 11 and if an MRI was not available or could not be done in a timely manner, it would have been appropriate for Dr. Fall to order a transfer of Plaintiff to a different hospital which could provide that service (*Id*.).[6]  Plaintiff contends an MRI would have shown the early stages of a brainstem stroke (*Id*.).

Plaintiff was transferred to the intensive care unit at Defendant Hospital at 1:40 p.m. (Court File No. 132).  Dr. Fall requested a neurology consult upon Plaintiff's admission, but a neurologist

---

[5] Dr. Caldwell was dismissed as a defendant in this case pursuant to a stipulation of dismissal (Court File No. 30).

[6] Dr. Fall testified that Defendant Hospital's procedures required an additional approval if an MRI was requested for a patient for something other than an acute injury (Court File No. 166, Attachment 2).

did not see Plaintiff until the next day (Court File No. 167). Specifically, Dr. Sharon Farber ("Dr. Farber"), a Chattanooga neurologist who went to Defendant Hospital on Tuesdays and Fridays for consultations, examined Plaintiff on November 12 (*Id*.). Dr. Farber's impression was seizures probably caused by alcohol and Xanax withdrawal (Court File No. 132).[7]

Dr. John Jaggers ("Dr. Jaggers") and Dr. Marcum, a pulmonologist, also saw Plaintiff (Court File No. 132). Dr. Jaggers' impression included status epilepticus probably due to a combination of alcohol withdrawal, alprazolam withdrawal and possible contribution by hyponatremia (*Id*.).

Overall, five different doctors (Dr. Caldwell, Dr. Fall, Dr. Jaggers, Dr. Farber, and Dr. Marcum) as well as several nurses saw Plaintiff during his two-day stay at Defendant Hospital (Court File No. 132). Several of the doctors were told by Plaintiff's family members that he had a long history of alcoholism and Xanax use (*Id*.).

On November 13, another CT scan was ordered because it was discovered Plaintiff's eyes were not responsive (Court File No. 167). This new CT scan revealed signs of an acute brain stem injury (Court File No. 132). Thereafter, an MRI examination was conducted, which indicated Plaintiff had suffered a stroke resulting from basilar artery thrombosis (*Id*.). Dr. Fall requested an immediate transfer of Plaintiff to Erlanger Hospital ("Erlanger") in Chattanooga (*Id*.). Plaintiff was transferred to Erlanger and underwent magnetic resonance angiography with TPA and a blood clot in the basilar artery was cleared (Court File No. 167).

Plaintiff is now confined to a nursing home and has lost "nearly all motor function" although

---

[7] Dr. Farber testified she was the sole neurologist for Defendant Hospital during the relevant time period and that patients were sometimes transferred to Chattanooga hospitals for neurological issues (Court File No. 166, Attachment 3). Dr. Fall testified he had previously requested that the Defendant Hospital obtain increased neurologist coverage (Court File No. 166, Attachment 2).

he is "cognizant of his surroundings and discomfort" (Court File No. 167). Plaintiff alleges that

Defendant Hospital's care of Plaintiff amounted to medical negligence under Tennessee law and as

a result of Defendant Hospital's negligence, Plaintiff suffered injury.


III. **DISCUSSION**

A. **Plaintiff's Motion to Strike Defendant Hospital's Supporting Affidavits**

Plaintiff argues the affidavit of Dawn Haynes, R.N. and the affidavit of John Hyde, Ph.D.

which Defendant Hospital filed in support of its motion for partial summary judgment do not comply

with Fed. R. Civ. P. 56(e) ("Rule 56(e)") and therefore, should be stricken. Rule 56(e) states in

relevant part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set
> forth such facts as would be admissible in evidence, and shall show affirmatively that
> the affiant is competent to testify to the matters stated therein. Sworn or certified
> copies of all papers or parts thereof referred to in an affidavit shall be attached
> thereto or served therewith. The court may permit affidavits to be supplemented .
> . .

The main objection Plaintiff asserts against both of the affidavits is that copies of the

supporting documentation were not attached to them. The Court views this as a mere technical error

which has been cured by the Defendant Hospital with its manual filing of supplemental affidavits

along with the supporting documentation (Court File Nos. 201, 202, & 220). Rule 56(e) specifically

authorizes the filing of supplemental affidavits; therefore, this objection is without merit. *See Giles*

*v. University of Toledo*, No. 3:04 CV 7643, 2007 WL 777980, *4 (N.D. Ohio March 14, 2007)

(denying a motion to strike portions of an affidavit based upon the filing of a supplemental affidavit

which attached the missing documentation).

Plaintiff also objects to both affidavits based upon the assertion they contain testimony for

which Dawn Haynes, R.N. and John Hyde, Ph.D. ("affiants") lack personal knowledge. Plaintiff is correct that summary judgment affidavits must be made on personal knowledge. *See Sperle v. Michigan Dep't of Corrections,* 297 F.3d 483, 495 (6th Cir. 2002). However, both affiants have been designated as experts pursuant to Federal Rule of Civil Procedure 26; therefore, the admissibility of their opinion testimony is governed by Federal Rules of Evidence 702 ("Rule 702") and 703 ("Rule 703").[8] Rule 702 provides expert witnesses may only testify where that testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.[9] "As a threshold matter, expert witnesses must be qualified to testify to a matter relevant to the case, and a proffering party can qualify their expert with reference to his knowledge, skill, experience, training or education." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 293 (6th Cir. 2007)(citing Fed. R. Evid. 702)(internal quotation marks and citations omitted).

Dawn Haynes, R.N.'s qualifications are specifically outlined in paragraphs two (2) through four (4) of her affidavit (Court File No. 132, Attachment 1). She has been continuously licensed to practice nursing in Tennessee since 2000 and has had extensive practical experience as a registered nurse (*Id.*). John Hyde, Ph.D.'s qualifications are outlined in the same numbered paragraphs of his affidavit (Court File No. 132, Attachment 2). He is currently a tenured professor in the area of healthcare management and has served as an administrator and corporate officer of several hospitals

---

[8] The Court accepts as true that Dawn Haynes R.N. and John Hyde Ph.D. have been properly designated experts under the Federal Rules of Civil Procedure since Plaintiff did not dispute their status as experts.

[9] Even though, Federal Rule of Evidence 601 mandates that the competency of Defendant Hospital's expert witnesses concerning the state law claims be determined in accordance with Tennessee law, "the only difference between Fed. R. Evid. 702 and its comparable provision in the Tennessee Rules of Evidence is that the Tennessee Rule requires that the aid to the trier of fact be substantial." *Tucker v. American Tel. & Tel. Corp.,* 794 F.Supp. 240, 246 (W.D. Tenn. 1992).

and healthcare organizations (*Id.*). The Court notes Plaintiff has failed to provide any evidence to impeach these qualifications. Plaintiff has not deposed either Ms. Haynes or Dr. Hyde nor provided an opposing affidavit concerning either of their qualifications (Court File No. 201). Therefore, the Court finds both Ms. Haynes and Dr. Hyde are qualified to provide expert opinions.

Rule 703 does not require experts to possess the type of personal knowledge that lay witnesses must. *Darling v. J.B. Expedited Services, Inc.*, No. 2:05-CV-00017, 2006 WL 2238913, *9 (M.D. Tenn. Aug. 3, 2006) ("[U]nlike key witnesses, who must testify based on personal knowledge, expert witnesses do not need to have personal knowledge of the underlying facts; they may testify to opinions based on facts perceived by or made known to the expert before the hearing."). Rule 703 specifically allows experts to base their opinions and inferences on facts "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion to be admitted." FED. R. EVID. 703. The affidavits specifically indicate that the experts are basing their opinion on medical records. There is no question that medical records are reasonable relied upon by experts in the fields of professional nursing and health care administration. Therefore, Plaintiff's objection to the affiants' lack of personal knowledge is also without merit.

Plaintiff also argues that statements within some of the medical records are inadmissible hearsay which cannot form the basis of an expert opinion. Rule 703 specifically allows an expert to rely on facts or data in forming his or her opinion which are not admissible in evidence. FED. R. EVID. 703. Therefore, inadmissible hearsay may form the basis of the affiants' expert opinions. However, courts cannot consider inadmissible hearsay in an affidavit when ruling on a summary judgment motion. *North American Specialty Ins. Co. v. Myers,* 111 F.3d 1273, 1283 (6th Cir.1997).

Plaintiff specifically alleges paragraphs five (5) through seven (7) of Dawn Haynes R.N.'s affidavit contain hearsay. These three paragraphs concern statements made to medical personnel relating to Plaintiff's medical history and symptoms. Accordingly, they fall under the hearsay exception contained in Federal Rule of Evidence 803(4), which allows statements for purposes of medical diagnosis or treatment.[10]

Plaintiff also argues that some of the statements made in the two affidavits are conclusory in nature. An expert's affidavit in a medical malpractice action must not consist of vague, conclusive statements. *See Stovall v. Clarke*, 113 S.W.3d 715, 723 (Tenn. 2003). An expert opinion is not conclusive if "some underlying basis" consisting of "specific facts" is shown for the opinion testimony. *Id.*; *Scott v. Miller*, Nos. 05-6671, 05-6754, 2006 WL 3368767, *6 (6th Cir. Nov. 20, 2006). Specifically, Plaintiff argues that Dawn Haynes' testimony in paragraphs fifty-five (55) and fifty-six (56) of her affidavit does not sufficiently demonstrate her familiarity with the applicable standard of care (Court File No. 132, Attachment 1). Ms. Haynes' affidavit viewed as a whole, does contain specific facts which demonstrate that she is familiar with the standard of care in the medical community where Defendant Hospital is located (*Id.*). Specifically, in paragraph four (4) of her affidavit she testifies she was a practicing registered nurse at the Defendant Hospital for approximately four (4) years (*Id.*). Plaintiff makes similar arguments concerning paragraphs fifty-six (56) and fifty-seven (57) of Dr. Hyde's affidavit (Court File No. 132, Attachment 2). Paragraphs three (3) and four (4) of his affidavit state that he has served as an administrator and corporate officer for hospitals similarly situated to Defendant Hospital (*Id.*). These facts demonstrate he is also familiar with the applicable standard of care concerning administration and

---

[10] The corresponding state rule is Tennessee Rule of Evidence 803(4).

management of hospitals.

Plaintiff also specifically argues Dr. Hyde's affidavit does not recite any of his training or experience after 1994; therefore, he does not have sufficient knowledge to assess a community hospital in 2004. A plain reading of paragraph two (2) through four (4) of his affidavit indicates Dr. Hyde is currently a "tenured professor at the University of Mississippi Medical Center in the Department of Health Sciences-School of Health Related Professions in Jackson, Mississippi" (*Id.*). He currently teaches, researches and advises others concerning healthcare management and "admin-legal" issues (*Id.*). He has provided advise to various hospitals and healthcare organizations and entities regarding these issues for fifteen (15) years (*Id.*). He also specifically states that prior to accepting his current position he was a professor at Trinity University from 1994 to1995 and an adjunct faculty member at the University of Alabama, Birmingham from 1990 to 1994 (*Id.*). Based upon the plain language of his affidavit, it can be inferred that Dr. Hyde has been at the University of Mississippi since 1994. Therefore, Dr. Hyde does have sufficient training, experience and knowledge to provide an expert opinion concerning a community hospital in 2004 and Plaintiff's technical argument must fail.

Plaintiff also argues the affidavits do not specify the applicable standards of care nor identify how the facts satisfy it. Under Tennessee law, Plaintiff has the burden of proving the elements of medical malpractice. *See* TENN. CODE ANN. § 29-26-115. The Tennessee Supreme Court has held that in a medical malpractice action, affidavits which clearly refute plaintiff's contentions "afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise." *Fitts v. Arms*, 133 S.W.3d 187, 190 (Tenn. Ct. App. 2003)(citing *Bowman v. Henard*, 547 S.W.2d 527, 531 (Tenn. 1977). In order for Defendant Hospital's affidavits to effectively refute a claim of malpractice, "they must present facts rebutting the allegations of . .

. [Plaintiff's] complaint as to at least one of the three statutory elements for medical malpractice actions." *Id.* "To properly refute one of the statutory elements, a defendant must simply file an expert affidavit stating that all of his care and treatment of the plaintiff met the recognized standard of acceptable professional practice or that his treatment was not the cause of any injury to the plaintiff. . . ." *Id.* This language seems to place a lighter burden on a defendant's affidavit in support of a summary judgment motion. The Court finds Defendant Hospital has met this burden. The affidavits in this case indicate that the affiants are familiar with the applicable standard of care, chronologically list the events of Plaintiff's medical care and treatment, and enumerate their expert opinion the standard of care was complied with.

In summary, Plaintiff's objections to the two affidavits in support of Defendant Hospital's motion for partial summary judgment go to the weight of the opinion testimony and not to its admissibility. Accordingly, the Court will **DENY** Plaintiff's motion to strike in its entirety (Court File No. 169) and will consider the affidavits of Dawn Haynes, R.N. and John Hyde, Ph.D. in the Court's resolution of Defendant Hospital's motion for partial summary judgment.

### B. Defendant Hospital's Motion for Partial Summary Judgment

Defendant Hospital characterizes Plaintiff's claims into four categories: (1) Defendant Hospital's nursing staff failed to comply with the applicable standard of care as to Plaintiff, (2) Defendant Hospital was negligent for not being properly equipped to diagnose and treat Plaintiff, (3) Defendant Hospital as well as its nursing staff failed to transfer, diagnose, administer and interpret diagnostic studies, order medications, admit Plaintiff to the intensive care unit and followed an inappropriate course of treatment, and (4) Defendant Hospital is vicariously liable for the alleged fault of its employee, Defendant Dr. Fall (Court File No. 132). The Court agrees with Defendant

Hospital's general characterization of Plaintiff's claims.[11]  Defendant Hospital moves for partial

summary judgment on the first three claims.  As to the first two, Defendant Hospital contends

Plaintiff must refute these claims with expert testimony which he failed to do by the applicable

deadlines (*Id.*).  As to the third claim, Defendant Hospital argues Plaintiff failed to state a claim

upon which relief can be granted since doctors, not hospitals or nurses, have a duty to do these

things (*Id.*).  Defendant Hospital does not move for summary judgment on the fourth claim.[12]  In

support of its motion Defendant Hospital submitted two affidavits, the affidavit of Dawn Haynes

R.N. and the affidavit of John Hyde, Ph.D. which the Court will consider.

    In his response brief, Plaintiff argues Defendant Hospital was negligent with respect to its

policies and procedures for use of the MRI and transfer of patients as well as its failure to provide

adequate neurologist coverage at the hospital.  Plaintiff argues his expert, Dr. Salzman, has raised

---

[11] In his second amended complaint Plaintiff asserts a claim for medical negligence against
the "Health Care Provider Defendants" which include Defendant Hospital, Defendant Dr. Fall and
Defendants John Does 4-12 who are various nurses, physicians or other medical professionals
employed by or acting as agents of Defendant Hospital (Court File No. 159).  Specifically, Plaintiff
claims these Defendants (1) failed to recognize Defendant Hospital's diagnostic and treatment
limitations (Defendant Hospital was unequipped to diagnose and treat Plaintiff), (2) failed to
immediately or otherwise timely transfer Plaintiff to another health care facility, (3) failed to
diagnose Plaintiff's neurological symptoms in a timely manner, (4) failed  to obtain an appropriate
medical history for Plaintiff, (5) failed to timely administer and interpret diagnostic studies, (6)
inappropriately ordered and administrated medicine to Plaintiff, (7) failed to admit Plaintiff to the
intensive care unit upon presentation, (8) misdiagnosed or ignored Plaintiff's recognized or
recognizable symptoms, and (9) provided an inappropriate course of treatment to Plaintiff (*Id.*).  It
should be noted that Plaintiff filed his second amended complaint after Defendant Hospital filed the
subject motion for partial summary judgment.  As indicated in his second motion for leave to amend
(Court File No. 113) the only difference between Plaintiff's amended complaint and Plaintiff's
second amended complaint is that Evelyn Poteet is named as a plaintiff in her capacity as
conservator of Bennie Poteet, II.  Therefore, the filing of Plaintiff 's second amended complaint has
no effect on the construction of Plaintiff's claims for the purposes of this motion.

[12] The Court has already denied Defendant Dr. Fall's motion for summary judgment (Court
File Nos. 107 & 108) based upon Plaintiff's presentation of expert testimony which created a
disputed fact issue as to whether Dr. Fall committed medical malpractice in treating Plaintiff.

13

a genuine issue of material fact regarding the hospital's staffing as well as its policies and procedures, therefore, summary judgment is not appropriate. In support of his opposition to Defendant Hospital's motion for partial summary judgment, Plaintiff submitted (1) excerpts from the deposition of Dr. Salzman, (2) excerpts from the deposition of Dr. Fall, (3) excerpts from the deposition of Dr. Farber, and (4) the affidavit of Dr. Salzman.[13]

1. ***Liability of Defendant Hospital for the alleged medical malpractice of its nursing staff***

Plaintiff claims Defendant Hospital is liable for the alleged medical malpractice of various nurses, physicians or other medical professionals it employed at the time Plaintiff was under its care. Specifically, Plaintiff claims Defendant Hospital's nursing staff failed to comply with the applicable standard of care.

Negligence on the part of a health care provider in a medical malpractice action is not presumed, it must be affirmatively proven. TENN. CODE ANN. § 29-26-115(c); *Richardson v. Miller*, 44 S.W.3d 1, 15 (Tenn. Ct. App. 2000). Additionally, the mere fact that a patient has incurred an injury does not permit an inference of negligence. *Redwood v. Raskind*, 350 S.W.2d 414, 417 (Tenn. Ct. App. 1961); *Hurst v. Doughterty*, 800 S.W.2d 183, 185 (Tenn. Ct. App. 1990). In the absence of a preponderance of the evidence to the contrary, it is presumed the medical provider discharged his full duty. *Hurst*, 800 S.W.2d at 185 (citations omitted).

Plaintiff has the burden in a medical malpractice action of proving the applicable standard of care. TENN. CODE. ANN. § 29-26-115(a). Plaintiff must prove three statutory elements of a medical malpractice claim to prevail:

---

[13] Plaintiff relied upon the affidavit of Dr. Salzman which was previously submitted in opposition to Dr. Fall's motion for summary judgment (Court File No. 89).

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

TENN. CODE ANN. § 29-26-115(a). Under Tennessee law, Plaintiff is required to submit expert testimony to prove each of the three elements. TENN. CODE ANN. § 29-26-115(b). In *Moon v. St. Thomas Hosp.*, the Tennessee Supreme Court held "[t]he standard of care and the deviation from the standard of care, therefore, are not established by a reasonable person standard as in other areas of negligence law. Summary judgment, therefore, is inappropriate if competent expert testimony is conflicting." *Moon v. St. Thomas Hosp.*, 983 S.W.2d 225, 229-30 (Tenn. 1998). An expert is competent to establish the facts required for a medical malpractice claim if he practiced a relevant specialty in Tennessee or a contiguous bordering state during the year preceding the alleged injury. TENN. CODE ANN. § 29-26-115(b).

Defendant Hospital presented the affidavit of one of its experts, Dawn Haynes, R.N., concerning this issue (Court File No. 132, Attachment 1). Ms. Haynes testified she was licensed to practice nursing in Tennessee during the 12 month period prior to the time of Plaintiff's admission to Defendant Hospital (*Id*.) Additionally, she testified she worked at the Defendant Hospital as a registered nurse for approximately four years (*Id*.) Based upon her education, training, and experience, Ms. Haynes testified she is familiar with the medical community in which Defendant

Hospital is located and with the applicable standard of acceptable professional practice for nursing care in that community (*Id*.)  After a recitation of the relevant facts, Ms. Haynes opined "the nurses who provided nursing care to Mr. Poteet [Plaintiff] during his November 11, 2004 admission to Cleveland Community Hospital [Defendant Hospital] complied at all times with the applicable standard of care" (*Id*.).

Under the summary judgment standard, once the Defendant Hospital's affidavit established the relevant education, training, and experience of its expert witness, the facts or data relied upon, familiarity with the applicable standards of care, and the expert's opinions that the applicable standard of care was complied with, the burden shifts to the Plaintiff to rebut the opinion, with admissible expert opinion, that the applicable standard of care was not complied with. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); TENN. CODE ANN. § 29-26-115(b).

In opposition to Defendant Hospital's motion, Plaintiff submitted excerpts from the depositions of Dr. Salzman, Dr. Fall, and Dr. Farber as well as Dr. Salzman's affidavit which was previously filed in opposition to Dr. Fall's motion for summary judgment (Court File No. 166).  Dr. Fall is a defendant in this case and has not been designated as Plaintiff's expert.  Dr. Farber was a neurologist employed by Defendant Hospital during the time period relevant to this case (Court File No. 167).  Dr. Faber has not been joined as a defendant and Plaintiff has not designated her as an expert; therefore she also testified as a fact witness.[14]  Plaintiff has designed Dr. Salzman as one of his experts (Court File No. 90).   Accordingly, the only evidence the Court will consider on this issue is the affidavit of Dr. Salzman (Court File No. 89) and excerpts of his deposition testimony

---

[14]  Defendant Hospital asserts Plaintiff failed to timely or untimely disclose any expert witnesses regarding this issue (Court File No. 132).  Plaintiff has failed to dispute this assertion, therefore, the Court relies on it in resolving this motion.

which Plaintiff presented (Court File No. 166, Attachment 1).

Dr. Salzman's expert testimony solely concerns whether Defendant Dr. Fall's conduct fell below the applicable standard of care (Court File Nos. 89 & 166, Attachment 1). In his affidavit, Dr. Salzman professes to be an expert on the applicable standard of care for doctors, not nurses or hospital administrators (Court File No. 89). He testified he is aware of the standard of acceptable professional practice for hospitalists and internists (doctors) in a community similar to Cleveland, Tennessee where Defendant Hospital is located (*Id.*). He then identified the diagnosis and treatment decisions a doctor conforming to the standard of reasonable care would have made concerning Plaintiff's treatment (*Id.*). Dr. Salzman opined that "based upon his knowledge, qualifications and experience . . . Dr. Adam Fall failed to act with ordinary and reasonable care in accordance with the recognized standard of care in the local community in treating [Plaintiff]" (*Id.*). Additionally, excerpts of Dr. Salzman's deposition also concern his opinion as to whether Defendant Dr. Fall's conduct fell below the applicable standard of care (Court File No. 166, Attachment 1). Dr. Salzman even testified during his deposition he was not going to offer criticism of any other healthcare provider except Dr. Fall (*Id.* at p. 76).

Considering this evidence in a light most favorable to Plaintiff, the Court finds Plaintiff has not presented any expert testimony which creates a genuine issue of material fact regarding Defendant Hospital's nursing staff's alleged medical malpractice; therefore, summary judgment is appropriate on this claim.[15]   The Court will **GRANT** Defendant Hospital summary judgment on

---

[15] On April 5, 2007, significantly after the deadline to reply to Defendant Hospital's motion, Plaintiff untimely filed the affidavit of Jenny Beerman, R.N. (Court File No. 231, Attachment 1). In her affidavit, Ms. Beerman testifies that the nursing care Plaintiff received at the Defendant Hospital fell below the standard of care (*Id.*). As already noted, the Court is not considering this affidavit since Plaintiff did not comply with the local rules. However, Plaintiff's filing of Ms. Beerman's affidavit makes it apparent that Plaintiff recognizes his failure to present sufficient expert

Plaintiff's claim that it is liable for the alleged medical malpractice of various nurses it employed at the time Plaintiff was under its care.

### 2. *Negligence claim against Defendant Hospital*

Plaintiff claims Defendant Hospital was negligent for not being properly equipped to diagnose and treat Plaintiff. Specifically, Plaintiff alleges Defendant Hospital's policies and procedures concerning use of the MRI and transfer of patients as well as its failure to provide adequate neurologist coverage are below the applicable standard of care.

"Medical malpractice" does not encompass every negligence action brought against a health care provider. *Estate of Doe v. Vanderbilt University, Inc.*, 958 S.W.2d 117, 120 (Tenn. Ct. App. 1997). "Medical malpractice cases typically involve a medical diagnosis, treatment or other scientific matters. The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or act requiring specialized skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the trier of fact." *Peete v. Shelby County Health Care Corp.*, 938 S.W.2d 693, 696 (Tenn. Ct. App. 1996). Defendant Hospital's policies and procedures concerning use of the MRI and transfer of patients as well as its decision as to how many neurologists to employ are administrative issues and not a matter of medical science. Therefore, this is a simple negligence claim and Plaintiff is not required to provide expert testimony regarding it as the Tennessee Malpractice statue (Tenn. Code Ann. § 29-26-115) does not apply.[16] *See Estate of Doe*, 958 S.W.2d at 123 (finding expert testimony not necessary in negligence action against

---

testimony to refute the affidavit of Dawn Haynes, R.N.

[16] However, the Court notes that expert testimony regarding this issue would assist the jury.

hospital for failure to warn former patients who received transfusions that blood they received was not tested for HIV); *Peete*, 938 S.W.2d at 696 (finding expert testimony not necessary in negligence action against hospital for injuries a patient received when a hospital employee dropped a suspension bar on the patient's head).

Plaintiff must prove five elements to establish negligence: "(1) a duty of care owed by the defendant to the plaintiff [the applicable standard of care]; (2) conduct by the defendant falling below the applicable standard of care [a breach of the duty owed]; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation." *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006).

Defendant Hospital presented the affidavit of its expert, John Hyde, Ph.D. in connection with this issue (Court File No. 132, Attachment 2). Dr. Hyde testified regarding his education, training, and experience in health care administration and his familiarity with the recognized standard of care applicable to the administration and management of hospitals similarly situated to Defendant Hospital during the relevant time period (*Id.*). Dr. Hyde opined "the level of services and equipment available at Cleveland Community Hospital [Defendant Hospital] in November 2004, including for patients such as the Plaintiff, was appropriate . . . [and] acceptable under the applicable standard of care" (*Id.*). Accordingly, Defendant Hospital shifted the burden to Plaintiff who must show disputed facts concerning this issue.

The evidence Plaintiff submitted on this issue is very limited. Specifically, Plaintiff submitted excerpts from the depositions of Dr. Fall and Dr. Farber regarding this issue.[17] Dr. Fall testified he had requested that the administration of Defendant Hospital make arrangements for more

---

[17] As indicated previously, Dr. Salzman's expert testimony solely concerns whether Dr. Fall's conduct fell below the applicable standard of care.

frequent coverage by neurologists at the hospital (Court File No. 166, Attachment 2, at p. 82). Dr.

Fall also testified an MRI diagnostic test would require someone else's approval in the absence of

indications of an acute injury (*Id*. at p. 110).

Dr. Farber testified she provided neurological services to Defendant Hospital on Tuesdays

and Fridays during the relevant time period (Court File No. 166, Attachment 3, at p. 9). In

November 2004 the neurologist coverage at Defendant Hospital included Dr. Farber and one other

neurologist who covered in her absence (*Id*. at 10). Dr. Farber also testified physicians at Defendant

Hospital sometimes transferred patients to a Chattanooga hospital for neurological services (*Id*. at

13).

The Court concludes Plaintiff failed to make a sufficient showing on several essential

elements of his negligence claim. Plaintiff did not present any evidence defining the applicable

standard of care, whether or not it was met, or causation; therefore, summary judgment is

appropriate.[18] The Court will **GRANT** Defendant Hospital summary judgment on Plaintiff's claim

that it was negligent for not being properly equipped to diagnose and treat Plaintiff.

### 3.     *Plaintiff's failure to state a claim*

Defendant Hospital argues pursuant to Federal Rule of Civil Procedure 12(b)(6) several of

Plaintiff's claims against it should be dismissed because of their failure to state a claim upon which

relief can be granted. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court

---

[18] On March 22, 2007, significantly after the deadline to reply to Defendant Hospital's motion, Plaintiff untimely filed the supplemental affidavit of Dr. Salzman (Court File No. 217). In his affidavit, Dr. Salzman testifies that the Defendant Hospital's conduct was below the applicable standard of care (*Id*.). As already noted, the Court is not considering this affidavit since Plaintiff did not comply with the local rules. However, Plaintiff's filing of Dr. Salzman's supplemental affidavit makes it apparent that Plaintiff recognizes his failure to present sufficient evidence to create a fact dispute concerning this issue.

must construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998); *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc*., 856 F. Supp. 1229, 1232 (S.D. Ohio 1994), accept all the complaint's factual allegations as true, *Bloch*, 156 F.3d at 677; *Broyde v. Gotham Tower, Inc*., 13 F.3d 994, 996 (6th Cir. 1994), and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6, (1957); *see also Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Coffey v. Chattanooga-Hamilton County Hosp. Auth*., 932 F. Supp. 1023, 1024 (E.D. Tenn. 1996). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should neither weigh evidence nor evaluate the credibility of witnesses); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). Rather, the Court must liberally construe the complaint in favor of the party opposing the motion and may dismiss the case only where no set of facts could be proved consistent with the allegations which would entitle the plaintiff to a recovery. *Hishon v. Spalding*, 467 U.S. 69, 73 (1984); *Miller*, 50 F.3d at 377.

Specifically, Plaintiff claims Defendant Hospital as well as its nursing staff committed medical malpractice by failing to transfer Plaintiff, properly diagnose Plaintiff, administer and interpret Plaintiff's diagnostic studies, order medications, admit Plaintiff to the intensive care unit and that they followed an inappropriate course of treatment. Under the Tennessee Medical Malpractice statute (Tenn. Code. Ann. § 29-26-115), Plaintiff must prove the Defendant Hospital as well as its nursing staff owed Plaintiff a duty to perform these acts. *Kelly v. Middle Tennessee Emergency Physicians, P.C.*, 133 S.W.3d 587, 592 (Tenn. 2004) (finding that no claim for medical malpractice can succeed in the absence of any of the elements of common law negligence).

Under Tennessee law, hospitals and nurses are prohibited from performing these acts;

therefore, they cannot be held liable for failing to do something they had no duty to perform. Tenn. Code Ann. § 63-6-201(a) prohibits non-physicians, including hospitals and nurses, from practicing medicine. The practice of medicine is defined as providing treatment, diagnoses or prescribing for any physical ailment or injury of another. TENN. CODE ANN. § 63-6-204(a)(1). Additionally, nurses are specifically prohibited from performing acts of medical diagnosis or developing treatment plans for patients. TENN. CODE ANN. § 63-7-103(b). All of the conduct contained in this claim involves diagnoses or treatment decisions; therefore, Defendant Hospital nor any of its non-physician staff, including its nursing staff, had a duty to perform these acts as they are legally prohibited from doing so. The Court finds no set of facts could be proved consistent with the allegations of this claim which would entitle Plaintiff to a recovery.

Additionally, Defendant Hospital provided expert testimony that hospitals and nurses do not have these duties. "In a hospital setting, decisions regarding whether to admit patients or whether to transfer patients are made by physicians, and not by 'the hospital.'" (Court File No. 132, Attachment 2, at ¶ 58). "The applicable standard of care did not require any of the nurses to diagnose Mr. Poteet, order that Mr. Poteet be transferred, interpret diagnostic studies, order medications, or develop a treatment plan. These are actions which nurses in Tennessee are not authorized to take." (Court File No. 132, Attachment 1, at ¶ 58).

Accordingly, Plaintiff's claim Defendant Hospital and its nursing staff committed medical malpractice for failing to transfer Plaintiff, properly diagnose Plaintiff, administer and interpret Plaintiff's diagnostic studies, order medications, admit Plaintiff to the intensive care unit and that they followed an inappropriate course of treatment will be **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6).

IV.     **<u>CONCLUSION</u>**

For the foregoing reasons, the Court will **DENY** Plaintiff's motion to strike (Court File No.

169) and the Court will **GRANT** Defendant Hospital's motion for partial summary judgment (Court

File No. 131) in its entirety.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**