UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| BENNIE J. POTEET, II, Individually and | ) | |
| by and through EVELYN POTEET, as | ) | |
| conservator of Bennie Joe Poteet, II, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:05-CV-309 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| POLK COUNTY, TENNESSEE, *et al*., | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM

Before the Court is Defendants Polk County, Tennessee and Polk County Sheriff's

Department as well as Defendants Sheriff Bill Davis, Bobby Copeland, Joshua Jenkins, Michael

Griffith, Sarah Boring and James Burris' (collectively "Defendants"), in their official capacities,

motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and  supporting

exhibits (Court File No. 133) as well as Defendants' brief in support (Court File No. 134).  Plaintiff

Bennie Poteet, II, both individually and by and through Evelyn Poteet, his conservator ("Plaintiff

") filed a response brief in opposition with several exhibits attached (Court File No. 174) as well

as numerous other exhibits (Court File Nos. 175-185).[1]

---

[1]  Pursuant to the Local Rules, Plaintiff's deadline to respond to Defendants' motion was
March 5, 2007.  Plaintiff filed additional exhibits in response to Defendants' motion after this
deadline (Court File No. 192).  Defendants deadline to reply was March 12, 2007.  Defendants did
not file a reply brief until March 19, 2007 (Court File No. 212) as well as an amended exhibit on
March 22, 2007 (Court File No. 216).  Defendants also untimely filed a separate motion to exclude
Plaintiff's video deposition, which Plaintiff relied upon in opposing Defendants's motion for
summary judgment (Court File No. 213).   Plaintiff filed a response to Defendants' motion to
exclude Plaintiff's video deposition (Court File No.225) and Defendants filed a reply (Court File
No. 232).  The Court will not consider any briefs or material filed after the applicable deadlines in

Also before the Court is Defendants Bill Davis, Joshua Jenkins, Sarah Boring, Michael Griffith, and James Burris' (collectively "Individual Defendants"), in their individual capacities, motion for summary judgment (Court File No. 135).[2] Plaintiff filed a response brief (Court File No. 172).

After carefully considering the parties' arguments and the applicable law, the Court will **GRANT IN PART** and **DENY IN PART** Defendants Polk County, Tennessee and Polk County Sheriff's Department as well as the Individual Defendants', in their official capacities, motion for summary judgment (Court File No. 133) and will **GRANT** the Individual Defendants', in their individual capacities, motion (Court File No. 135).[3] The Court will consider both of Defendants' motions for summary judgment together (Court File Nos. 133 & 135).

I.      STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in

---

its resolution of Defendants' motion for summary judgment. The documents the Court will disregard include: Court File Nos. 192, 212, 213, 216, 225, & 232.

[2] Pursuant to the Scheduling Order (Court File No. 26) the deadline to file dispositive motions was February 12, 2007. Defendants filed a supporting brief on February 13, 2007 (Court File No. 137). As this brief was untimely filed, the Court will not take it into consideration.

[3] On the same day this Court entered the accompanying order, Plaintiff filed a motion for leave to amend his complaint along with a copy of his proposed third amended complaint (Court File No. 321). Plaintiff's proposed amended complaint does not include Defendant Joshua Jenkins, Sarah Boring or Michael Griffith in their individual capacities or James Burris in either his individual or official capacity. The accompanying order dismisses these defendants from the case; therefore, that portion of Plaintiff's motion for leave to amend is rendered moot.

the record and all inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id*. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    RELEVANT FACTS

In deciding a motion for summary judgment the Court is required to view the evidence in the light most favorable to the nonmoving party, in this case Plaintiff. Based upon the deposition

excerpts and records Plaintiff submitted as well as the deposition excerpts Defendants submitted, the Court determines the following facts are pertinent to the consideration of these motions.[4]

Plaintiff's claims against Defendants Polk County, Tennessee, Polk County Sheriff's Department, Sheriff Bill Davis, Bobby Copeland, Joshua Jenkins, Michael Griffith, Sarah Boring and James Burris arise out of events which occurred on November 10, 2004 and November 11, 2004, during and following Plaintiff's incarceration in the Polk County Jail ("County Jail") (Court File No. 174).[5] Plaintiff was arrested by the Polk County Sheriff's Department ("Sheriff's Department") on November 2, 2004 for driving under the influence. Plaintiff contacted Ocoee Bonding Company and posted bond with a check which was returned for insufficient funds.

There is evidence that some time between November 2, 2004 and November 10, 2004, Plaintiff was arrested for an alcohol-related event by McMinn County, Tennessee authorities (Court File No. 134). During the course of this arrest, Plaintiff gave chase and was "tasered" by McMinn County officers (*Id.*). Plaintiff was subsequently hospitalized and incarcerated (*Id.*). During this event, there is evidence Plaintiff suffered injury to his legs (*Id.*).

Plaintiff did not appear in Polk County General Sessions Court ("Court") for a hearing scheduled for 9:00 a.m. on November 10, 2004 concerning the Polk County charges (Court File No. 133, Attachment 7, Deposition of C.R. Graham, at p. 6-7).[6] As ordered by the presiding Judge, the

---

[4] Plaintiff's exhibits are located at Court File Nos. 174-185. Defendants' exhibits are located at Court File No. 133.

[5] All facts were taken from Plaintiff's response brief (Court File No. 174) unless otherwise indicated.

[6] Plaintiff claims he chose not to appear since he was apprehensive about returning to the Polk County Jail as he had been mistreated by jailers while previously incarcerated there (Court File No. 174).

bail bondsman picked Plaintiff up on the morning of November 10, 2004 and transported him to the Polk County Court. It is undisputed that Plaintiff drank beer on the evening of November 9, 2004; however, the amount of alcohol, if any, Plaintiff consumed the morning he was taken into custody is unknown. The bondsman, C.R. Graham, testified Plaintiff appeared to be intoxicated and had a 12-pack of beer with one can opened when he arrived to take Plaintiff to the courthouse (Court File No. 133, Attachment 7, Deposition of C.R. Graham, at p.10). However, the bondsman did not allow Plaintiff to take the open beer with him, as Plaintiff requested (*Id*. at 10-11).

Judge Baliles was presiding over Court. Defendant Bobby Copeland ("Copeland"), a deputy and Chief Correctional Officer of the Sheriff's Department, was acting as a bailiff. Sheriff Bill Davis ("Sheriff Davis") was unable to recall whether he was present at the courthouse or the County Jail during the relevant time period.[7] Judge Baliles ordered that a breathalyzer test be performed on Plaintiff and that a deputy deliver Plaintiff to the County Jail.

Joshua Jenkins ("Jenkins") was the deputy on duty at the County Jail on November 10, 2004. Through radio dispatch, Copeland reported a disturbance at the courthouse in Judge Baliles'

---

[7] It is very unclear whether Sheriff Davis was present at all during the events which occurred on November 10th and 11th. In his first deposition, Sheriff Davis testified he was not at the Sheriff's Department on either November 10th or 11th of 2004 and he possibly could have been out of town on those days (Court File No. 133, Attachment 1, Deposition of Sheriff Bill Davis, at p. 14). In his second deposition, Sheriff Davis testified he simply does not remember whether he was at the County Jail on those two days and he has no records to prove one way or the other (Court File No. 174, Attachment 9, Deposition of Sheriff Bill Davis, at p. 15). Sheriff Davis also testified in all probability he was not present at the County Jail on November 11 and he had some of his staff tell him he was not there on November 10th either (*Id.*). Additionally, Sarah Boring testified she tried to call Sheriff Davis to obtain an OR bond for Plaintiff on November 11th, but she could not reach him because he was out of town (Court File No. 133, Attachment 3, Deposition of Sarah Boring, at p. 130). Jenkins also testified Sheriff Davis as out of town on November 11 (Court File No. 133, Attachment 4, Deposition of Joshua Jenkins, at p. 196). Plaintiff testified he never saw Sheriff Davis at the County Jail and Sheriff Davis did not hurt him (Deposition of Bennie Joe Poteet, II at p. 34 & 36).

courtroom (Court File No. 174, Attachment 7, Deposition of Joshua Jenkins, at p. 159-60). Copeland asked Jenkins to come to the courthouse and take Plaintiff to the County Jail for contempt of court (*Id*. at 162). Jenkins alone transported Plaintiff from Court to the County Jail. Jenkins testified Plaintiff was "extremely drunk" and needed assistance standing and walking during the booking process. Jenkins was unable to complete the entire booking process due to Plaintiff's intoxication. Jenkins did not notice any visible wounds on Plaintiff's body when he assisted Plaintiff in changing into prison attire. Jenkins then placed Plaintiff in a very small cell referred to as the "drunk tank." There is no way to see into this cell when the steel door is closed. Despite Judge Baliles' order, Jenkins did not perform a breathalyzer test on Plaintiff. There is conflicting testimony as to whether the Sheriff's Department had a policy of taking the blood alcohol level of an inmate who is visibly intoxicated.

Plaintiff alleges Copeland later returned to the County Jail and physically abused him while he was isolated in the drunk tank and completely out of view.[8] This abuse allegedly bloodied both of Plaintiff's knees. Jenkins was on duty until 6:00 p.m. that day (Court File No. 134). He testified no one entered Plaintiff's cell during his shift (*Id*.). Plaintiff claims he reported the abuse to another Polk County employee (Deposition of Bennie Joe Poteet, II at p. 26-27). Copeland, Sarah Boring, Michael Griffith, Jenkins and were on duty following the attack but it is unknown who received the report.

On the evening of November 10, 2004, Jenkins transferred Plaintiff from the drunk tank to the ten-man cell with other inmates. Jenkins asked Plaintiff how he was feeling and Plaintiff

---

[8] Plaintiff claims another inmate previously committed suicide without detection in the same drunk tank cell.

responded "hung over" (Court File No. 134). Plaintiff was offered a cup of coffee, but otherwise did not receive any food or water on that day. Michael Griffith ("Griffith") relieved Jenkins and worked as a deputy and/or correctional officer of the Sheriff's Department during the night shift on November 10, 2004. Griffith worked alone that night and does not recall anything out of the ordinary occurring (Court File No. 134). Plaintiff made at least two phone calls that night from the County Jail (*Id.*).

Jenkins came back on duty in the early morning hours of November 11, 2004. He recalls seeing Plaintiff asleep during the head count he conducted of the inmates at approximately 6:00 a.m. that morning (Court File No. 133, Attachment 4, Deposition of Joshua Jenkins, at p. 194-95). Jenkins saw Plaintiff again sometime after that when the inmates were served breakfast (*Id.*). At that time, Plaintiff got up from his bunk and retrieved a tray of food (*Id.*). There is no evidence that Plaintiff ever requested medical care.

Later that morning, Jenkins heard the inmates in the ten-man cell hollering "man down" (*Id.*). Within a minute Jenkins arrived in the cell to find Plaintiff lying on the floor having what appeared to be seizures (*Id.*). Jenkins immediately radioed for an ambulance and placed Plaintiff on a mattress and carried it into the hallway with the assistance of some other inmates (*Id.*). The ambulance arrived at the County Jail within four minutes of the call at 9:44 a.m. (*Id.*). Jenkins does not know exactly when Plaintiff's seizures began.

When the emergency personnel ("EMTs") arrived, they assessed Plaintiff and determined transport to a hospital was appropriate. Copeland protested and inquired as to whether Plaintiff was faking a seizure in order to get out of jail (Court File No. 134). Both Jenkins and the EMTs insisted Plaintiff be transported to a hospital (*Id.*). The ambulance left the County Jail at 10:06 a.m., which

is approximately twenty-two (22) minutes after it arrived (Court File No. 133, Attachment 11, Deposition of Dennis Hughes, at p. 13).

Plaintiff was transported to Defendant Cleveland Community Hospital ("Defendant Hospital"). Jenkins followed the ambulance to Defendant Hospital. No one from the Sheriff's Department contacted Plaintiff's family members, even though Plaintiff had provided his father's name as an emergency contact. Once he arrived at Defendant Hospital, even though Plaintiff was unconscious and unresponsive, Jenkins placed Plaintiff in leg shackles and "guarded" him (Court File No. 317). The substance of the information provided or not provided to the medical practitioners caring for Plaintiff is disputed. Jenkins informed them of Plaintiff's previous intoxicated condition as well as his observation of Plaintiff having what appeared to be seizures (Court File No. 134). Additionally, Sarah Boring ("Boring") received communication at the County Jail from Deborah Vanderveer, Plaintiff's girlfriend, concerning Plaintiff's Xanax consumption, which Boring in turn conveyed to Defendant Hospital (*Id*.). Ultimately, an own recognizance bond ("OR bond") was issued for Plaintiff while at Defendant Hospital (*Id*.).

Plaintiff contends his current condition, locked-in syndrome, resulted from a brain stem stroke which began on November 11, 2004. He alleges the stroke was caused by a clot that formed after the dissection of an artery in his neck, which likely happened during the physical abuse he sustained in the County Jail by Copeland. Plaintiff also contends the actions and/or inactions of Defendant Hospital and its employee, Defendant Dr. Adam Fall, constituted medical malpractice.

Plaintiff is now confined to a nursing home. The stroke damaged only the portion of Plaintiff's brain that controls voluntary motor function. Therefore, even though he can no longer voluntarily move any part of his body, except his eyes, his cognitive awareness and ability remain

intact and relatively unchanged. Even though there is evidence that Plaintiff is capable of participating in his health care decisions to some extent, he is unable to feed, clothe, or bathe himself and requires full time care and assistance (Court File Nos. 134 & 174). Plaintiff's locked-in syndrome is believed to be permanent (Court File No. 109).

Plaintiff also alleges Polk County, Tennessee ("Polk County") is responsible for his current situation because its policies and procedures regarding its County Jail do not comply with standards established by state law nor do the conditions at the County Jail meet minimal constitutional standards regarding the health and safety of its inmates.[9] Specifically, Plaintiff alleges it was the customary practice of the County Jail to have only one correctional officer ("officer") on duty to supervise the entire inmate population and none of the officers had adequate medical training.

The Tennessee Corrections Institute ("TCI") conducted annual inspections of the County Jail to determine if it could be certified and whether minimum constitutional standards were being met. Plaintiff submitted several TCI reports, dating back to 1995, concerning the County Jail which indicate it was understaffed, did not employ staff with any formalized medical training, did not have a contract with a medical provider, did not maintain proper surveillance of inmates, did not remove asbestos from cells, and did not perform medical examinations on inmates. TCI records also indicate the County Jail has not been certified since 1997. According to Sheriff Davis, Polk County Commissioners refused to provide additional funding which was requested to correct problems in the County Jail.

---

[9] Plaintiff contends Sheriff Davis is responsible for drafting and implementing proper policies and procedures in order to ensure the County Jail meets the required standards.

## III.    DISCUSSION

Plaintiff brings claims against two governmental entities (1) Polk County, Tennessee, and (2) Polk County Sheriff's Department, as well as six individuals in both in their official and individual capacities including (3) Sheriff Bill Davis, (4) Bobby Copeland,[10] (5) Joshua Jenkins, (6) Sarah Boring, (7) Mike Griffith, and (8) James Burris (Court File No. 159).   Plaintiff's claims include (1) a federal claim against all Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983 alleging (a) violation of the Eighth Amendment's protection of inmates from abuse by correctional officers and other inmates, (b) violation of the Eighth Amendment's protection against cruel and unusual punishment, and (c) excessive use of force in taking Plaintiff into custody and detaining him, (2) a state-law claim against Defendants Copeland, Jenkins, Sarah Boring, Griffith, and James Burris, in their individual capacities, for battery, (3) a state-law claim against Defendants Copeland,  Jenkins, Sarah Boring, Griffith, and James Burris, in their individual capacities, for intentional infliction of emotional distress, and (4) a state-law claim against Defendants Copeland, Jenkins, Sarah Boring, Griffith, and James Burris, in their individual capacities, alleging negligence (*Id.*).

Defendants move for summary judgment on all of Plaintiff's claims against them in both their official and individual capacities.  Specifically, Defendants move for dismissal of (1) Plaintiff's claims against Sheriff Davis, Jenkins, Sarah Boring, Griffith, James Burris, in their individual capacities alleging that there is simply no factual allegations to support these claims; (2)  Plaintiff's claims against Sheriff Davis (in his individual capacity) and Sarah Boring, James Burris, and

---

[10]  As Bobby Copeland is deceased, Amy Mason, the personal representative of his estate, has been substituted as a Defendant for Bobby Copeland (Court File No. 319).  The Court will refer to this Defendant as "Copeland."

10

Griffith (in their individual and official capacities) alleging they are barred by the statute of limitations as Tenn. Code Ann. § 28-1-106 ("Tennessee Disability Statute") did not toll the applicable limitations period; (3) Plaintiff's claims against Polk County Sheriff's Department and Sheriff Davis, Copeland, Jenkins, Sarah Boring, Griffith, James Burris, in their official capacities, alleging they are not available and/or redundant; (4) Plaintiff's claims pursuant to 42 U.S.C. § 1983 against all the Defendants alleging (a) the doctrine of qualified immunity shields Defendants Sheriff Davis, Copeland, Jenkins, Sarah Boring, Griffith, and James Burris from liability, (b) Plaintiff has not established a claim against the municipality, Polk County, Tennessee, and (c) Plaintiff has not established a claim under the Eighth Amendment; (5) Plaintiff's state-law claims of battery and intentional infliction of emotional distress; and (6) all Plaintiff's claims alleging all Defendants are entitled to immunity under Tenn. Code Ann. §§ 29-20-201 *et seq*. ("Tennessee Governmental Tort Liability Act") (Court File No. 134). Defendants submitted several deposition excerpts in support of their motion (Court File No. 133, Attachments 1-12).

Plaintiff argues Defendants' motions misstate his claims and there is disputed evidence concerning each of his claims which renders summary judgment improper. In support of his opposition to Defendants' motions, Plaintiff submitted several exhibits which the Court considered including Plaintiff's video-recorded deposition and transcript, other deposition excerpts, witness statements, and documents concerning the Polk County Jail (Court File Nos. 174-185).

A. **Plaintiff's claims against the Individual Defendants**

Defendants Sheriff Davis, Jenkins, Sarah Boring, Griffith and James Burris ("Individual

Defendants") move for summary judgment in their individual capacities  (Court File No. 135).[11]

They contend they did not engage in any conduct which caused or contributed to Plaintiff's condition.  Plaintiff contends Defendant Bobby Copeland physically abused  him and he reported this abuse to one of the Individual Defendants and nothing was done (Court File No.172). Additionally, Plaintiff claims the Individual Defendants failed to provide him with proper medical care.

The parties have agreed to dismiss Sarah Boring and James Burris in their individual capacities (Court File No. 172), accordingly, the Court will **DISMISS** Plaintiff's claims against these two defendants in their individual capacities and will not consider them in this motion. Therefore, Defendants Sheriff Davis, Jenkins and Griffith remain.  Plaintiff's claims  include a federal claim pursuant to 42 U.S.C. § 1983 against all three Defendants as well as state-law claims for battery, intentional infliction of emotional distress and negligence against Jenkins and Griffith.

### 1.      Plaintiff's § 1983 claim against Jenkins and Griffith

Jenkins was named as a Defendant in his official and individual capacities in Plaintiff's original complaint (Court File No. 1).[12]  Jenkins was a deputy and/or correctional officer ("officer") of the Sheriff's Department during the relevant time period.  Jenkins was the officer who initially

---

[11] Bobby Copeland, nor his estate, is included in Defendants' motion for summary judgment in their individual capacities (Court File No. 135).  Additionally, neither Bobby Copeland or his estate have moved for summary judgment for his individual liability.  Therefore, Plaintiff's claims against Defendant Bobby Copeland in his individual capacity remain for trial.

[12] Defendants allege that there remains a question concerning sufficiency of process as to Jenkins.  However, this argument is without merit since the evidence indicates Jenkins voluntarily signed an acknowledgment of service (Court File No. 133, Attachment 4, Deposition of Joshua Jenkins, at p. 15).

transported Plaintiff from the courthouse to the jail. He was also the officer on duty at the County Jail during the day shift on both days Plaintiff was incarcerated. Griffith was also an officer of the Sheriff's Department during the relevant time period. He was added as a Defendant in Plaintiff's amended complaint (Court File No. 93). Griffith was the officer on duty during the night of November 10, 2004.

"Section 1983 provides a federal cause of action for civil damages against an individual acting under color of state law who deprives another of 'rights, privileges, or immunities secured by the Constitution and laws.'" *Jones v. Reynolds*, 438 F.3d 685, 689 (6th Cir. 2006). To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under the color of state law. *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000). None of the Individual Defendants dispute they were acting under color of state law during the events the subject of this action (Court File No. 135). Therefore, the focus is on the first element. Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts underlying the claim, the plaintiff must provide sufficient allegations to give defendants fair notice of the claims against them. *Leatherman v. Tarrant County Narcotic Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993). To state a § 1983 claim, Plaintiff must allege sufficient facts that, if true, would establish the Defendants deprived him of a right secured by the Constitution of the United States while they acted under color of law. *See Brock v. McWherter,* 94 F.3d 242, 244 (6th Cir.1996).

In analyzing a § 1983 claim, the Court must initially determine whether the plaintiff possessed a federal constitutional right that has been invaded. Plaintiff's Section 1983 claims are premised on alleged Eighth and Fourteenth Amendment violations. Specifically, Plaintiff claims (1) he was

denied proper medical care and/or it was delayed by Defendants' conduct, (2) Defendants failed to protect him, and (3) that he was the victim of excessive use of force while incarcerated, all in violation of his right to be free of cruel and unusual punishment.

### a.    *Denial and/or Delay of Medical Care*

Prisoners have a constitutional guarantee to medical care for serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 103-04 (1976). Specifically, the Eighth Amendment prohibits prison or jail authorities from inflicting cruel and unusual punishment on inmates by acting with deliberate indifference to their serious medical needs.[13] *Id.* at 106.

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference. Deliberate indifference as analyzed by this court has both an objective and a subjective component. In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. The subjective component requires that an official who actually knew of the serious medical need possessed a sufficiently culpable state of mind in denying medical care.

*Perez v. Oakland County*, 466 F.3d 416, 423-24 (6th Cir. 2006); *see also Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Figel v. Stasewich,* 2:05-CV-189, 2007 WL 1032371, *5-8 (W.D. Mich. March 30, 2007) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (holding a claim for the deprivation of adequate medical care has both an

---

[13]   "Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Bell v. Wolfish,* 441 U.S. 520, 545 (1979)).

objective and a subjective component)).  The objective component is satisfied "where the seriousness of a prisoner's need for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference."  *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).  Therefore, Plaintiff must show the Individual Defendants actually knew of a serious medical need and possessed "a sufficiently culpable state of mind in denying medical care."  *Perez*, 466 F.3d at 424.

Plaintiff must show both the objective and subjective components, and  "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838.   An inadvertent failure to provide adequate medical care cannot be said to constitute a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-106 (finding negligence alone cannot sustain an Eighth Amendment claim).   In other words, the inmate must demonstrate deliberate indifference by the official, i.e., the official knew of and disregarded an excessive risk to inmate health or safety.  *Farmer v. Brennan,* 511 U.S. at 835-840.

There is no evidence that Jenkins or Griffith were  aware of a serious medical need and acted with deliberate indifference to that need.  Plaintiff complains Jenkins did not properly medically screen him upon his arrival at the County Jail, provide necessary information to health care providers, or contact Plaintiff's family.   These allegations do not appear to be sufficiently egregious to rise to the level of a constitutional violation.[14]

---

[14]  Even though Jenkins testified Plaintiff appeared intoxicated when he was booked upon his arrival at the County Jail, there is no evidence Jenkins was aware Plaintiff had any serious medical need.

Jenkins testified he asked Plaintiff how he was feeling on the evening of November 10 and Plaintiff responded "hung over" (Court File No. 174, Attachment 7, Deposition of Joshua Jenkins, at p. 173-74). Jenkins visibly witnessed Plaintiff sleeping, specifically breathing and snoring, on the morning of November 11 at approximately 6:00 a.m. when he and Griffith performed a head count (*Id*. at p.194-95). Jenkins also witnessed Plaintiff walk over and get a tray of food for breakfast on that morning. Plaintiff never made a request for medical care to either Jenkins or Griffith, or anyone else at the County Jail while incarcerated (*Id*. at p. 209). It was not obvious to Jenkins that Plaintiff had a serious medical need until he found him having what appeared to be seizures in the cell later that morning. Nothing suggests Jenkins or Griffith had any suspicion Plaintiff was in need of medical care before that. As soon as it was obvious Plaintiff was at risk, Jenkins did not disregard that risk, but immediately called an ambulance in order to provide Plaintiff with appropriate medical care (Court File No. 133, Attachment 4, Deposition of Joshua Jenkins, at p. 189). Griffith does not remember having any communication with Plaintiff or anything out of the ordinary occurring during his night shift and there is no evidence to the contrary. Consequently, Griffith had no effect on Plaintiff's medical care and/or treatment. There is no evidence that either Jenkins or Griffith subjectively perceived facts from which to infer a substantial risk to Plaintiff and then disregarded that risk, i.e., that they were deliberately indifferent to Plaintiff's serious medical needs. Therefore, Plaintiff's allegations against them do not rise to the level of a constitutional violation.

Plaintiff also claims Defendants delayed his medical care. Deliberate indifference can be manifested when a defendant *intentionally* delays access to medical attention for a serious medical need. *Estelle*, 429 U.S. at 104. When the alleged constitutional violation is a delay in medical treatment for a serious medical need, the Court must examine the effect of the delay to ascertain

whether the deprivation was sufficiently grave that it posed a substantial risk of serious harm. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). Where, as here, the delay-of-treatment claim involves a non-obvious injury, a plaintiff must submit verifying medical evidence showing the detrimental effect of the delay. *Blackmore*, 390 F.3d at 898 (citing *Napier*, 238 F.3d. at 742-43).[15]

There is no evidence either Jenkins or Griffith *intentionally* delayed Plaintiff's medical care. Upon discovery of Plaintiff's need for medical care, Jenkins immediately summoned medical personnel to the County Jail and even insisted Plaintiff be transported to a hospital over Copeland's objection. There is no evidence that Jenkins did anything but facilitate Plaintiff's medical care and/or treatment. Griffith went off duty at approximately 6:45 a.m. on November 11 (Court File No. 174, Attachment 11, Deposition of Michael Griffith, at p. 8) and was no longer at the County Jail when Plaintiff presented a serious medical need at approximately 9:40 a.m. (Court File No. 134). Accordingly, Plaintiff's allegations of denial and/or delay of medical care pursuant to § 1983 against Jenkins and Griffith in their individual capacities will be **DISMISSED**.[16]

### b. *Failure to Protect*

Plaintiff contends Jenkins and Griffith failed to (1) properly supervise the inmates and protect them from abuse,[17] and (2) do anything in response to Plaintiff's report of abuse. There is disputed evidence as to whether Plaintiff was physically abused by Copeland and whether he reported the

---

[15] Plaintiff has submitted some evidence that the onset of his stroke occurred prior to when Defendant Dr. Fall saw him for the first time at Defendant Hospital on November 11, 2004 (Court File No. 174, Attachment 2, Deposition of Gary Salzman, M.D., at p. 141).

[16] The Court notes Copeland did not move for summary judgment on this issue in his individual capacity; however, even if he had, there are disputed issues of material fact which would preclude summary judgment in his favor.

[17] Specifically, Plaintiff claims there should have been constant monitoring of the cells, for example, by video surveillance.

abuse to either Jenkins or Griffith. There is limited evidence concerning the circumstances of Plaintiff's claim that Copeland physically abused him. There is no evidence as to exactly when, how or why such abuse occurred. Considering the evidence in light most favorable to Plaintiff, the Court will assume any physical abuse of Plaintiff by Copeland was unjustified as there is no evidence Plaintiff caused any problems which would require physical restraint or force by the officers.

The Eighth Amendment "prohibits conduct by prison officials that involves the unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987) (internal quotation marks and citations omitted). "It has been widely held that the unjustified striking, beating, or infliction of bodily harm upon a prisoner by ... a correctional officer gives rise to liability under 42 U.S.C. § 1983." *Franklin v. Aycock,* 795 F.2d 1253, 1258 (6th Cir.1986). Plaintiff does not claim that Jenkins or Griffith physically abused him or that they witnessed his abuse. In fact there is no evidence that either Jenkins or Griffith had any knowledge of Plaintiff's abuse until after the fact when Plaintiff allegedly reported it. Even if an officer does not employ excessive force himself, he can still be held liable if he owes the victim a duty of protection against the use of deadly excessive force by other officers. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). To prevail on a "failure to protect" claim, Plaintiff must show: "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id*.

However, the Court found no cases in the Sixth Circuit "where a nonsupervisory officer who was not present at the scene or did not actively participate in a constitutional deprivation was held liable for the failure to prevent the constitutional violation from occurring." *Smoak v. Hall*, 460 F.3d 768, 784-85 (6th Cir. 2006); *see also Sargent v. City of Toledo Police Dep't*, 150 Fed. Appx. 470, 474

(6th Cir. 2005) (holding that "supervisory officers who order a subordinate officer to violate a person's constitutional rights and non-supervisory officers present during a violation of person's civil rights who fail to stop the violation can be liable under § 1983"); *see also Barton v. Norrod,* 106 F.3d 1289, 1299 (6th Cir.1997) (holding that "a non-supervisory law enforcement officer *present* at a scene where other officers are violating a person's civil rights may have a duty to intervene") (emphasis added).

Copeland was Jenkins' and Griffith's supervisor. There is no evidence that Griffith had reason to know that excessive force would be or was being used against Plaintiff or that he had an opportunity to prevent harm to Plaintiff. Plaintiff claims Copeland physically abused him while he was in the drunk tank on November 10. Jenkins testified he removed Plaintiff from the drunk tank in the late afternoon on November 10 at approximately 5:00 p.m. (Court File No. 174, Attachment 7, Deposition of Joshua Jenkins, at p. 158). This was well before Griffith came on duty at approximately 6:45 p.m. (Court File No. 174, Attachment 11, Deposition of Michael Griffith, at p. 8). Consequently, Griffith was not even at the County Jail when Plaintiff was allegedly abused. Therefore, summary judgment is appropriate on this claim as to Griffith.

There is very limited evidence that Jenkins may have had reason to know of the alleged use of excessive force against Plaintiff and that Jenkins had the means to prevent it. Plaintiff claims Copeland physically abused him while he was located in the drunk tank. Jenkins testified that he was the only person with keys to that cell on that date. However, there is no evidence that Jenkins was present during his supervisor's alleged physical abuse of Plaintiff or that he actively participated in the abuse. Therefore, summary judgment is appropriate on this claim as to Jenkins also.

In summary, Plaintiff's Eighth Amendment claim pursuant to § 1983 of failure to protect as

to Jenkins and Griffith in their individual capacities will be **DISMISSED**.


c.    *Excessive use of force*

Count I of Plaintiff's complaint asserts a claim of excessive use of force pursuant to § 1983 against Sheriff Davis, Copeland, Jenkins, and Griffith (Court File No. 159). Specifically, Plaintiff alleges the Eighth Amendment of the United States Constitution, the Constitution of the State of Tennessee, and federal and state law protect inmates from abuse by correctional officers (*Id*.). Plaintiff claims he was the subject of violent and abusive acts and excessive use of force during his incarceration (*Id*.).

The Court must apply different standards to this claim depending upon which constitutional amendment applies. Which amendment applies "depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between." *Phelps v. Coy,* 286 F.3d 295, 299 (6th Cir.2002). If Plaintiff was a free person at the time of the incident the Fourth Amendment's objective reasonableness standard governs. *Miller v. City of Columbus*, No. 2:05-CV-425, 2007 WL 915180, *9-10 (S.D. Ohio March 26, 2007)(internal citations omitted). "On the opposite end of the spectrum, the Eighth Amendment applies to an individual who was a convicted prisoner at the time of the encounter . . . Finally, the Fourteenth Amendment's due process clause protects a pretrial detainee from the use of excessive of force that amounts to punishment." *Miller*, 2007 WL 915180 at *10 (internal citations and quotation marks omitted).

"The Sixth Circuit has not specifically identified what constitutional right is violated when a post-arrest, pretrial detainee is allegedly assaulted by prison officials." *Leary v. Livingston County*, No. 03-60021, 2006 WL 2865213, *6 (E.D. Mich. October 5, 2006). The Supreme Court has

suggested in a footnote that: "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. After conviction, the Eighth Amendment serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified. Any protection that substantive due process affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment." *Graham v. Connor,* 490 U.S. 386, 395, n. 10 (1989). Thus, it appears "where a pretrial detainee no longer in the custody of the arresting officer alleges excessive force, that claim is analyzed as a violation of the Fourteenth Amendment Due Process Clause, and is analogous to a convicted prisoner's claim under the Eighth Amendment of cruel and unusual punishment." *Leary*, 2006 WL 2865213 at *6.

"[T]he Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer,* 511 U.S. at 832. "The Supreme Court set forth the standard for analyzing excessive force claims under the Eighth Amendment: 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)).

There is no evidence that any Defendant, except Copeland, used force against Plaintiff and/or physically abused Plaintiff.[18] Therefore, the Court will **DISMISS** Plaintiff's excessive force claim against Sheriff Davis, Jenkins, and Griffith in their individual capacities.

---

[18] In his deposition, Plaintiff testified Copeland hit him (Deposition of Bennie Joe Poteet, II at p. 34). Therefore, even if Copeland had moved for summary judgment in his individual capacity on this claim there are disputed issues of material fact which would preclude summary judgment in his favor.

### 2. Qualified Immunity

Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from civil damages liability in individual-capacity lawsuits so long as their actions do not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity, a court first must ascertain whether the facts alleged, taken in a light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; if so, it then must determine whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[19] Once a qualified immunity defense has been advanced, it is the plaintiff's burden to show that a defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir.2000); *Perez*, 466 F.3d at 426-27.

The only Individual Defendant Plaintiff will retain his § 1983 claim against is Copeland. Even though he did not move for summary judgment in his individual capacity, the Court has already noted that there are genuine issues of fact as to whether Copeland violated Plaintiff's constitutional rights. Thus, the Court notes it would not be proper to find Copeland is entitled to qualified immunity during the summary judgment stage.

### 3. Sheriff Bill Davis in his individual capacity

Sheriff Davis was the sheriff of Polk County during the relevant time period. Plaintiff

---

[19] The Sixth Circuit uses the two-step analysis in *Saucier*, as well as the three-step analysis in *Feathers v. Aey,* 319 F.3d 843 (6th Cir. 2003). The additional step involves an inquiry into whether a plaintiff has submitted sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* at 848. Either analysis captures *Saucier*'s holding. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.2 (6th Cir. 2005).

originally brought suit against Sheriff Davis in his official capacity only. However, subsequently, Plaintiff moved to amend his complaint to add Sheriff Davis in his individual capacity. United States Magistrate Judge Susan Lee granted Plaintiff's motion for leave to amend stating "the proposed amendments to name Sheriff Davis in his individual capacity are not futile" (Court File No. 87).

Plaintiff's § 1983 claim against Sheriff Davis is contained in Count I of his complaint (Court File No. 159). Specifically, Plaintiff alleges "Sheriff Bill Davis was responsible for annually managing and updating said policy and procedures and was negligent in failing to do so" (Court File No. 159).[20] There is disputed evidence as to whether Sheriff Davis was present at the County Jail during the events the subject of this action. However, there is no evidence that Sheriff Davis took affirmative acts against Plaintiff or that he had any contact with any person at the County Jail on the two days in question concerning Plaintiff. "That being the case, and given the fact that § 1983 does not contemplate vicarious liability claims, liability must be premised on some other ground, presumably supervisory liability or municipal liability." *Gulett v. Haines,* 229 F.Supp.2d 806, 813 (S.D. Ohio 2002) (stating "supervisory liability is just another form of individual liability").

"Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act . . .and cannot be based upon simple negligence." *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1246 (6th Cir.1989). "Section 1983 liability will not be imposed solely upon the basis of *respondeat superior*. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a §

---

[20] In Count V of Plaintiff's complaint, he specifically, asserts a state-law claim of negligence against several of the Defendants in their individual capacities, not including Sheriff Davis. Therefore, even though Plaintiff uses the word "negligent" in Count I of his complaint, the Court will not construe this to mean Plaintiff is asserting a separate state-law negligence claim against Sheriff Davis since Count I specifically deals with Plaintiff's § 1983 claims.

1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Turner v. City of Taylor,* 412 F.3d 629, 643 (6th Cir. 2005)(citing *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984); *Mills v. City of Barbourville,* 389 F.3d 568, 580 (6th Cir. 2004)).

Even though liability under § 1983 cannot be based on the doctrine of *respondeat superior*, a supervisor who possesses information indicating a strong likelihood of unconstitutional conduct by his subordinate may be liable. *See Curry v. Scott*, 249 F.3d 493, 505-06 (6th Cir. 2001)(concluding summary judgment should be denied because a trier of fact could find, based on the evidence submitted, that the supervisory defendants actually knew the officer posed a substantial risk of harm to prison inmates); *see also Doe v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003) (finding supervisors were not liable because they possessed no information indicating a strong likelihood of unconstitutional conduct by their subordinate); *Petty v. County of Franklin, Ohio*, 478 F.3d 341, 349 (6th Cir. 2007) (finding sheriff not liable in his individual capacity since there was no evidence that he was in any way directly involved in plaintiff's physical abuse or delay in medical care).

As there is no evidence that Sheriff Davis directly or indirectly encouraged or participated in specific conduct towards Plaintiff or had any knowledge of unconstitutional conduct of his subordinates, Plaintiff's § 1983 claims against him in his individual capacity will be **DISMISSED**.

### 4. Tolling of the applicable statute of limitations

Defendants argue that the statute of limitations had expired before Plaintiff requested leave to amend his complaint to add Sheriff Davis in his individual capacity as well as three new Defendants in both their official and individual capacities, Sarah Boring, Griffith, and James Burris

(Court File No. 87). Plaintiff argues he is of unsound mind as defined in Tenn. Code Ann. § 28-1-106; therefore, the applicable statutes of limitation are tolled against these Defendants (*Id.*). Magistrate Judge Susan Lee ("Judge Lee") has already considered this issue in connection with granting Plaintiff's motions to amend his complaint (*Id.*). Judge Lee held: "Plaintiff has plead sufficient facts to toll the statute of limitations under Tenn. Code Ann. § 28-1-106 because he allegedly is of unsound mind. Plaintiff has alleged that, in a single incident and as a result of the actions of the Polk County Defendants, he suffered a brain stem stroke which has rendered him permanently unable to care for himself and confined to a nursing home. Plaintiff has also plead sufficient facts, when viewed in the light most favorable to him, to show his disability was continuous and existed when the cause of action accrued" (*Id.*). Judge Lee then noted, even though Plaintiff's proposed amendments survived the Rule 12(b)(6) motion to dismiss standard, "it remains to be seen whether Plaintiff's claim of disability will survive a Rule 56 motion for summary judgment" (*Id.*).

Upon the entry of the accompanying order, Polk County and Bobby Copeland will be the only remaining Defendants, other than the medical provider defendants. They were all named as Defendants in Plaintiff's original complaint (Court File No. 1). The limitations period for Plaintiff's § 1983 claims, as well as his state-law claims, is one year after the cause of action accrued (Court File No. 87). Plaintiff asserts the incident at issue occurred on November 10 and 11, 2004, resulting in the expiration of the limitations period on November 11, 2005 (*Id.*). Plaintiff filed his original complaint on November 8, 2005 (Court File No. 1). Therefore, the Court will not consider the issues of Plaintiff's competency or whether the statutes of limitations are tolled since they are not applicable to the remaining Defendants. As the Court previously indicated, if a determination is required, "a jury is better suited to determine the issue of Plaintiff's competency" (Court File No. 123).

### 5.    Plaintiff's state- law claims

#### a.    Battery

In Count III of his complaint, Plaintiff alleges Defendants Copeland, Jenkins, and Griffith are liable in their individual capacities for the intentional tort of battery.[21]    Under Tennessee law, in order to prevail on this claim, Plaintiff must prove by a preponderance of the evidence Defendants made "intentional, unlawful, and harmful (or offensive) contact" with his person. *Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995); *Thompson v. Williamson County, Tenn.*, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997).

The only evidence that anyone made any intentional, unlawful, and harmful (or offensive) contact with Plaintiff, is Plaintiff's allegation Copeland physically abused him for no apparent reason while he was located in the drunk tank.[22]  There is no evidence Jenkins or Griffith made any unlawful or harmful contact with Plaintiff.  Therefore, the Court will **DISMISS** Plaintiff's claim for battery against Jenkins and Griffith in their individual capacities.

#### b.    Intentional Infliction of Emotional Distress

In Count IV of his complaint, Plaintiff alleges Defendants Copeland, Jenkins, and Griffith are liable in their individual capacities for the intentional tort of intentional infliction of emotional distress.  In *Miller v. Willbanks*, 8 S.W.3d 607, 612 (Tenn. 1999), the Tennessee Supreme Court

---

[21] Even though Plaintiff refers to the tort of assault in his response brief (Court File No. 174), he is precluded from asserting this claim as he does not allege assault in his complaint (Court File No. 159).

[22]  The Court notes Copeland did not move for summary judgment on this issue in his individual capacity; however, even if he had, there are disputed issues of material fact which would preclude summary judgment in his favor.

enumerated the elements of a claim for intentional infliction of emotional distress. A plaintiff is required to show "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct must result in serious mental injury to the plaintiff." *Id.*

In his complaint, Plaintiff generally asserts this tort without any specific allegations. The only evidence of conduct by either Jenkins and Griffith which may be construed as outrageous is Plaintiff's allegation that he reported the physical abuse he suffered from Defendant Copeland to one of these men and they did nothing in response. "Even though no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious," the Tennessee Supreme Court has adopted a high threshold standard. *Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn.1997).

> The cases thus far decided have found liability only where the defendant . . . has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.

*Id.* The Court finds Jenkins' and Griffith's alleged conduct does not raise to this high standard. Additionally, even though the Court does not discount Plaintiff's very serious current state, the record lacks evidence of a serious mental injury. "The kinds of emotional distress that may be remedied include fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Willbanks*, 8 S.W.3d at 616 (internal quotation marks omitted). There is no evidence Jenkins or Griffith exhibited any other conduct which could be defined as outrageous towards Plaintiff. Accordingly, Plaintiff's claim for intentional infliction of emotional distress

against Jenkins and Griffith will be **DISMISSED**.[23]

### c.     Negligence

Count V of Plaintiff's complaint asserts a state-law negligence claim against Defendants Copeland, Jenkins, and Griffith in their individual capacities for negligent and reckless treatment of Plaintiff while he was in these Defendants' custody (Court File No. 159).  Under Tennessee law, Plaintiff must prove five elements to establish a claim for negligence: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care [a breach of the duty owed]; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation." *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006).

Like any other plaintiff, an inmate must provide evidence supporting each element as to each defendant in order to prevail.  The Court finds Plaintiff failed to make a sufficient showing on several essential elements of his negligence claim.  Plaintiff did not present any evidence of specific conduct of either Jenkins or Griffith which fell below the applicable standard of care; therefore, summary judgment is appropriate and Plaintiff's state-law negligence claim against Jenkins and Griffith will be **DISMISSED**.[24]

### 6.     Immunity pursuant to Tennessee Governmental Tort Liability Act

Defendants argue they are entitled to immunity from Plaintiff's state law claims under the Tennessee Governmental Tort Liability Act ("Act"), Tenn. Code Ann. § 29-20-201 *et seq*.  Plaintiff

---

[23]   The Court notes Copeland did not move for summary judgment on this issue in his individual capacity; however, even if he had, there are disputed issues of material fact which would preclude summary judgment in his favor.

[24]   Even if Copeland would have moved for summary judgment in his individual capacity, it would not be granted as there are genuine issues of material fact regarding this state-law claim.

asserts his state-law claims of battery, intentional infliction of emotional distress, and negligence against Copeland, Jenkins, and Griffith.[25]   Upon entry of the accompanying order Jenkins and Griffith will be **DISMISSED** from this action in both their individual and official capacities; therefore, the Court will only consider whether Copeland is entitled to immunity from Plaintiff's state-law claims.[26]

The Act's protected entities include counties, municipalities, and other local governmental agencies. *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001).  Additionally, county employees acting in their official capacities are also protected since suits against county employees acting their official capacities are deemed to be suits against the county itself. *See Cox v. State*, 399 S.W.2d 776, 778 (Tenn. 1965) (holding suits against state employees acting in their official capacities are deemed to be suits against the State itself).   As this Court has previously indicated, "when the [Act] reserves immunity for governmental entities and employees in their official capacities, it allows plaintiffs to proceed against government employees in their individual capacities under Tennessee common law, unhindered by the [Act]." *Baker v. Snyder*, No. 1:05-CV-152, 2006 WL 2645163, *10 (E.D. Tenn. Sept. 14, 2006).  In this case, the Act does not remove governmental entity immunity from Plaintiff's state-law claims stemming from the alleged violation of his civil rights. *See* Tenn. Code Ann. § 29-20-205(2).   Therefore, the Act does not bar Plaintiff's state-law claims against Copeland in his individual capacity.

---

[25]  Plaintiff does not assert state-law claims against the municipal Defendants, Polk County and Polk County Sheriff's Department.

[26]  The Court will consider whether Copeland is entitled to immunity since he joined in Defendants' motion for summary judgment in their official capacities and this relief is specifically requested in that motion.

**B.** **Plaintiff's 42 U.S.C. § 1983 claim against Polk County, Polk County Sheriff's Department and the Individual Defendants in their Official Capacities**

**1.** **Dismissal of Individual Defendants in their Official Capacities**

Plaintiff's brings his § 1983 claim against Polk County, Polk County Sheriff's Department and Sheriff Davis, Copeland, Jenkins, Sarah Boring, Griffith, and James Burris, in their official capacities.[27] Defendants allege that suing a person in their official capacity is tantamount to suing the municipal entity and Plaintiff has included the municipal entities as defendants in this case; therefore, it is redundant to sue these individuals in their official capacity and they should be dismissed.

Suits against county officials in their official capacity should be treated as suits against the county. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978); *see also Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994). Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Several courts have found that since official capacity actions against a municipal officer are the equivalent of an action against the municipality itself, official-capacity federal claims are redundant. *See Von Herbert v. City of St. Clair Shores*, 61 Fed.Appx. 133, 140 (6th Cir. 2003); *Burgess v. Paducah Area Transit Authority*, No. 5:03-CV-166-R, 2006 WL 2228956, *1 (W.D. Ky. Aug. 2, 2006)(finding "all official-capacity suits will be dismissed as redundant"); *Gray v. City of Cincinnati*, No. 1:03CV119, 2006 WL 2193187, *8 (S.D. Ohio Aug. 1, 2006)(finding that since the official capacity suits against defendants are redundant, defendants

---

[27] The Court will consider whether Copeland should be dismissed in his official capacity since he joined in Defendants' motion for summary judgment in their official capacities and this relief is specifically requested in that motion.

were entitled to summary judgment on these claims); *Frost v. Hamilton County, Tenn.*, No. 1:04-CV-75, 2006 WL 228881, *6 (E.D. Tenn. Jan. 30, 2006)(dismissing claims against defendants in their official capacities as redundant where plaintiff had also sued the county in the context of a summary judgment motion on a § 1983 claim); *Gallardo v. Bd. of County Comm'rs,* No. 94-4064-SAC, 1995 WL 106366, at *2 (D. Kan. Jan.11, 1995)(finding "when a government entity is sued along with an officer of that entity in his official capacity, naming the officer in the suit may be redundant and unnecessary, and the interests of judicial economy, efficiency, and clarity for jurors may be promoted by dismissing the redundant claim against the officer in his official capacity"); *Ledbetter v. Knox County, Tenn*, No. 3:05-CV-248, 2006 WL 354200, *3 (E.D. Tenn. Feb. 15, 2006)(dismissing an entire count of a plaintiff's complaint as redundant).

In this case, Plaintiff's § 1983 claim against the municipal defendants and the Individual Defendants in their official capacities is contained in a single count of the complaint and no other count includes the Individual Defendants in their official capacities. Accordingly, the Court finds inclusion of the Individual Defendants in their official capacities is redundant and Sheriff Davis, Copeland, Jenkins, Sarah Boring, Griffith, and James Burris, will be **DISMISSED** in their official capacities.

### 2. 42 U.S.C. § 1983 Liability of the Municipalities

Plaintiff brought his § 1983 claim against Polk County and Polk County Sheriff's Department. Defendants correctly argue that Polk County Sheriff's Department is not an entity subject to being sued under § 1983. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994) (a police department is not an entity which can be sued under § 1983); *see also Brock v. Sevier County Courthouse*, 3:06-CV-418, 2007 WL 438735, *1 (E.D. Tenn. Feb. 6, 2007); *De La Garza v. Kandiyohi County Jail,* 18

Fed.Appx. 436, 437 (8th Cir.2001) (neither a county jail nor a sheriff's department is a suable entity); *Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir.1992)("[s]heriff's departments and police departments are not usually considered legal entities subject to suit"). Accordingly, the Court finds Polk County is the proper entity to address the allegations of Plaintiff's complaint and the Court will **DISMISS** the Polk County Sheriff's Department from this case.

Polk County cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir.2000) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978)). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). Thus, for Plaintiff to hold Polk County liable, "he must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Id.* (internal citations omitted); *see also Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir.1996). Specifically, "a plaintiff must demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Gregory*, 220 F.3d at 442 (internal citations and quotation marks omitted).

"[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Perez v. Oakland County,* 466 F.3d 416, 430 (6th Cir. 2006). "Where a city does create reasonable policies, but negligently

administers them, there is no deliberate indifference and therefore no § 1983 liability . . . In evaluating § 1983 claims against counties, we consider legitimate governmental interests such as the allocation of resources, including time, personnel, and money." *Id*. at 430-31 (internal citations and quotation marks omitted). "Deliberate indifference can be shown by proof that the city or county knows that inmates face a substantial risk of serious harm and disregards the risk by failing to take reasonable measures to abate it." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir.2004)(citing *Farmer*, 511 U.S. at 847).

Specifically, Plaintiff must identify a Polk County policy or custom that demonstrated deliberate indifference to the health and safety needs of inmates at the County Jail. In the context of medical care for inmates, Plaintiff argues that the absence of (1) medical screening at the time of booking, (2) persons with medical training at the County Jail, and (3) a contract with any medical provider to provide medical services to the inmates at the County Jail demonstrates deliberate indifference by Polk County. Additionally, in the context of inmate safety, Plaintiff argues Polk County's policies, or their lack of, are inadequate to prevent abuse of inmates by correctional officers. Specifically, Plaintiff argues there are no procedures for monitoring inmates in their cells.

Plaintiff cites several Polk County policies and procedures as well as numerous TCI annual inspection reports of the County Jail (Court File Nos. 175-185).[28] These reports indicate the County Jail failed to meet minimum standards and has not been certified by TCI since 1997 (*Id*.). Several specific deficiencies they highlight are Polk County's failure to (1) hire a sufficient number of correctional officers and/or officers with medical training, (2) contract with a medical provider to

---

[28] These reports do not meet the definition of hearsay under the Federal Rules of Evidence; however, even if they did, the public records exception applies.

provide treatment to inmates, (3) perform required medical examinations, and (4) maintain proper surveillance of inmates (*Id.*). Plaintiff claims Polk County policy makers, specifically Sheriff Davis and the county commissioners, have blatantly disregarded the deficiencies contained in TCI annual inspection reports for several years. Additionally, there is conflicting evidence as to whether Polk County had policies concerning the medical treatment of inmates as well as policies concerning inmate grievances and investigation of claims by inmates of abuse by correctional officers.

Plaintiff has provided evidence which connects his injury to Polk County's policies, or lack of such policies. Specifically, he argues that Polk County's failure to maintain proper surveillance of inmate cells lead to his unjustified physical abuse by Copeland and a delay in his medical treatment. Based upon the numerous TCI reports which put Polk County on notice of it's deficient policies and procedures, or their lack of, as well as the existence of conflicting evidence concerning this issue, the Court finds a reasonable jury could find Polk County acted with deliberate indifference to Plaintiff's health and safety needs and such indifference caused Plaintiff's injuries. Accordingly, the Court will **DENY** Polk County's motion for summary judgment concerning Plaintiff's § 1983 claim against it.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants Polk County, Tennessee, Polk County Sheriff's Department, Sheriff Bill Davis, Joshua Jenkins, Michael Griffith, Sarah Boring, and James Burris' motion for summary judgment in their official capacities (Court File No. 133) and will **GRANT** Defendants Sheriff Bill Davis, Joshua Jenkins, Michael Griffith, Sarah Boring, and James Burris' motion for summary judgment in their

individual capacities (Court File No. 135). Accordingly, all Plaintiff's claims against Defendants will be **DISMISSED**, except (1) Plaintiff's claims pursuant to 42 U.S.C. § 1983 for denial and/or delay of medical care and excessive use of force and pursuant to state law for battery, intentional infliction of emotional distress, and negligence against Defendant Bobby Copeland in his individual capacity, and (2) Plaintiff's claim pursuant to 42 U.S.C. § 1983 against Polk County, Tennessee. Additionally, Polk County Sheriff's Department as well as Defendants Sheriff Bill Davis, Joshua Jenkins, Michael Griffith, Sarah Boring, and James Burris, in both their official and individual capacities, will be **DISMISSED** from this case.

An Order shall enter

**/s/**_____

**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**